17 F.3d 1433
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Terry Wendell COPELAND, Plaintiff-Appellant,
v.
Richard A. LANHAM, Sr., Commissioner; Sewall B. Smith,
Warden; Gary Lutz, Captain; Isaac Mitchell,
Captain, Defendants-Appellees.
 No. 92-7116.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1993.
Decided March 2, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge.
 Bonnie Ilene Robin-Vergeer, Supervising Attorney, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., for appellant.
 Stephanie J. Lane-Weber, Assistant Attorney General, Baltimore, Md., for appellees.
 On brief: Steven H. Goldblatt, Patricia M. Batt, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., for appellant. J. Joseph Curran, Jr., Attorney General of Maryland, Carmen M. Shepard, Assistant Attorney General, Baltimore, Md., for appellees.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 Terry Wendell Copeland, a Maryland prisoner, filed a complaint pursuant to 42 U.S.C.A. Sec. 1983 (West 1981) against various prison officials,[1] alleging that they violated rights guaranteed to him under the Eighth and Fourteenth Amendments by forcing him to return to his cell and failing to provide him with assistance when he claimed that he had been sexually assaulted by his cellmate. The district court granted summary judgment in favor of the prison officials. Although we disagree with the reasoning of the district court, we find that it properly granted summary judgment and therefore affirm.
 
 I.
 
 2
 While many of the facts underlying this action are disputed by the Government, viewed in the light most favorable to Copeland, the record demonstrates the following. Copeland was convicted of murder in 1990 and is serving a state sentence of life imprisonment. On March 6, 1992, Copeland reported to the officer on duty that his cellmate had "sexually assaulted" him. Upon receipt of Copeland's complaint, the officer on duty contacted a superior officer, Defendant Captain Mitchell, by telephone and relayed the information. According to Copeland's verified complaint, the officer on duty told him that Captain Mitchell responded, "Fuck him, and tell[Copeland] to lockin for [sic] I come and lock him up, he already had five cellmates." Copeland then returned to his cell.
 
 
 3
 Two days later, Copeland submitted a written internal grievance, called a "Request for Administrative Remedy," in which he recounted Captain Mitchell's alleged response to his complaint of sexual assault and asked that disciplinary measures be taken against Captain Mitchell. Copeland's administrative remedy did not refer to any further assaults or to any continuing threat from his cellmate. Moreover, Copeland did not request assistance in dealing with his cellmate.
 
 
 4
 Three days after his initial complaint to the prison officer, Copeland sent a handwritten letter to the prison Psychology Department describing Captain Mitchell's alleged reaction to the events of March 6th and requesting assistance. The letter states in pertinent part:
 
 
 5
 [W]hile in this cell with my cellmate I goes through the same situation, day in and day out.... When my cellmate keep asking me to have sex with him, and I states no, it goes through one ear and comes out the other. This situation is driving me crazzy [sic] because I am force to deal with this situation, that is causing me to want to get physically active towards my cellmate, in which I am trying to avoid.
 
 
 6
 On March 12th, Defendant Captain Lutz ordered that Copeland be removed from his cell and placed in administrative segregation pending an investigation.[2] On May 15th, prison officials denied Copeland's Request for Administrative Remedy lodged against Captain Mitchell, in pertinent part, as follows:
 
 
 7
 You were ordered by Capt. Mitchell to lock in your cell or be placed on segregation. There was no evidence and/or witness to your allegation of being sexually assaulted. Medical files indicated no evidence of treatment on the prior or oncoming shift. Your claim is unfounded.
 
 
 8
 Copeland then filed a verified pro se Sec. 1983 complaint alleging that the prison officials' actions in failing to provide him with assistance and forcing him to return to his cell in response to his allegations of sexual assault constituted a violation of his Eighth and Fourteenth Amendment rights. He claimed that when he returned to his cell after complaining to Captain Mitchell, he suffered repeated sexual assaults. Copeland characterized the nature of these assaults as follows:
 
 
 9
 [Plaintiff's] cellmate was removing plaintiff['s] pants, feeling all over plaintiff['s] body, then removed his clothing, rubbing his penis on plaintiff, attempting to stick his penis in plaintiff['s] buttocks, holding plaintiff down on the bed.
 
 
 10
 The district court, concluding that Copeland had not shown by affidavits that he was physically assaulted and characterizing the alleged sexual assaults as "sexual overtures," granted summary judgment for prison officials. The court reasoned that "sexual overtures" were insufficient to rise to the level of cruel and unusual punishment. The district court also granted summary judgment in favor of the prison officials on Copeland's remaining claims. Copeland appeals.
 
 II.
 
 11
 Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecast evidence, Ross, 759 F.2d at 364, but it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). The essence of the inquiry the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "[I]f the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party," summary judgment should be granted. Id. at 248. We review de novo the decision of the district court to grant summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 III.
 
 12
 The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one convicted of a crime. U.S. Const. amend. VIII.[3] Scrutiny under the Eighth Amendment is not limited only to those punishments meted out by statute or imposed by a sentencing judge. See Wilson v. Seiter, 111 S.Ct. 2321, 2325 (1991). It also reaches "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993). However, to constitute cruel and unusual punishment within the meaning of the Eighth Amendment, "conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). Rather, "only the 'unnecessary and wanton infliction of pain' implicates the Eighth Amendment." Wilson, 111 S.Ct. at 2323 (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)) (internal quotation marks and emphasis omitted).
 
 
 13
 What is sufficient to comprise the " 'unnecessary and wanton infliction of pain' ... varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 112 S.Ct. 995, 998 (1992) (quoting Whitley, 475 U.S. at 320). In the context of allegations based on prison conditions, a prima facie case of cruel and unusual punishment in violation of the Eighth Amendment is established by a prisoner if he proves: " '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)), cert. denied, 114 S.Ct. 393 (1993); see Wilson, 111 S.Ct. at 2324-26. The first of these elements dictates that the court"determine whether the deprivation of the basic human need was objectively 'sufficiently serious,' and the second requires it to determine whether subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " Strickler, 989 F.2d at 1379 (quoting Wilson, 111 S.Ct. at 2324) (alteration in original). We discuss these elements in turn.
 
 A.
 
 14
 Because evolving precepts of humanity and personal dignity animate the Eighth Amendment, we are guided by contemporary standards of decency in determining whether an alleged harm is sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim. Hudson, 112 S.Ct. at 1000-01. We are mindful, however, that the constitutional prohibition on the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 111 S.Ct. at 2324 (citations and internal quotation marks omitted). Indeed, the ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Hudson, 112 S.Ct. at 1000. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment conditions of confinement claim. Id.
 
 
 15
 As the Supreme Court has recently reiterated, reasonable safety is a basic human need, and dangerous prison conditions may satisfy the objective component of an Eighth Amendment claim. Helling, 113 S.Ct. at 2481. Moreover, it is well-settled that the Eighth Amendment protects against conditions that pose a sufficiently imminent risk of harm as well. Id. Thus, prison officials must protect prisoners from specific known risks of impending future harm. Id.; Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987) (Eighth Amendment" protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm.").
 
 
 16
 We do not hesitate to conclude that viewed in the light most favorable to Copeland, the allegations of sexual assault set forth in his verified complaint state a sufficiently imminent and grave risk of deprivation of his reasonable safety to violate contemporary standards of decency. We hold, therefore, that a specific risk of the type of attack alleged in Copeland's verified complaint is sufficiently serious to raise a genuine issue of material fact concerning the objective component of an Eighth Amendment claim.[4]
 
 B.
 
 17
 Nevertheless, our conclusion that Copeland's allegations are sufficiently grievous to constitute a serious deprivation of a basic human need does not end the matter. The Eighth Amendment proscribes only cruel and unusual punishment. If an inmate suffers the deprivation of a basic human need due to mere negligence by prison officials, due to simple misfortune or accident, or due to his own actions, he has not suffered a deprivation that rises to the level of an Eighth Amendment violation. See Wilson, 111 S.Ct. at 2323-25. Rather, a prisoner must show that the officials acted with a culpable state of mind. Id. at 2322-26. In the context of a claim that prison conditions deprived a prisoner of a basic human need, a prisoner must show that the deprivation resulted from the prison officials' deliberate indifference to the conditions. Id. at 2326-27.
 
 
 18
 Viewed in the light most favorable to Copeland, we believe that the evidence presented is insufficient to raise a genuine issue of material fact concerning whether Captain Mitchell acted with deliberate indifference in response to Copeland's assertion that he had been sexually assaulted. In Copeland's verified complaint he alleged that Captain Mitchell told him "to lock-in for [sic] I come lock him up." Accompanying their motion for summary judgment, the prison officials submitted the Request for Administrative Remedy filed by Copeland in response to the events of March 6th. This document reflects that the investigation into those events led prison officials to conclude that Captain Mitchell had, in essence, instructed Copeland to "lock in [his] cell or be placed on segregation." J.A. 41. Nowhere in the copious materials submitted in response to the prison officials' motion does Copeland dispute that he understood Captain Mitchell's response to his complaint of assault as presenting him with the choice of returning to his cell or being placed in a different cell that was separated from the general prison population. In fact, in his opening brief submitted to this court, Copeland expressly adopted the prison officials' view of Captain Mitchell's response. See Brief of Appellant at 6 ("Copeland was 'ordered by Capt. Mitchell to lock in [his] cell or be placed on segregation.' "). Indeed, Copeland argued that the choice offered by Captain Mitchell evinced his deliberate indifference. Id. at 14 n. 9 ("Captain Mitchell actually threatened Copeland ... to 'lock in his cell or be placed on segregation,'--yet another sign of Captain Mitchell's lack of regard for Copeland's plight.").[5] We cannot agree.
 
 
 19
 Prison administrators must deal with numerous and broad-ranging prisoner complaints and accusations. Some of these are motivated by a true intention to obtain assistance concerning problems encountered with another inmate. Other complaints, however, are not the result of such pure motives. During the pendency of an investigation, removal of the inmate making the complaint, rather than the alleged offender, and temporary assignment of the complaining prisoner to segregation for his own protection is often the only immediate alternative available to prison officials. This is particularly true when, as here, there is no corroboration of the prisoner's allegations. Copeland suggests that the appropriate response by prison officials to his complaint would have been to immediately assign either him or his cellmate to a different cell. But, security and administrative considerations, as well as the reality of a prison environment, constrain prison officials from making random cell assignments, or, as in this case, from immediately accommodating a complaining inmate by allowing the inmate to move to another cell in the general prison population that is more to his liking.[6] Without question, prison officials must "be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Copeland was given a choice by Captain Mitchell--if your complaint is valid and you desire protection from impending harm, you may choose to be moved to a different cell, albeit one segregated from the general prison population.
 
 
 20
 We conclude that because Captain Mitchell offered Copeland the choice of being placed on segregation, thereby offering him a safe haven from his cellmate, Captain Mitchell did not act with deliberate indifference to Copeland's complaint; thus, any deprivation allegedly suffered by Copeland thereafter was a result of his own choice rather than an action taken with deliberate indifference by Captain Mitchell.
 
 
 21
 We recognize that viewed in the light most favorable to Copeland the evidence is sufficient to create a genuine issue of material fact concerning whether Captain Mitchell subjectively had a culpable state of mind; nevertheless, viewed in the light most favorable to Copeland, the evidence does not permit the inference that Captain Mitchell acted with deliberate indifference. Rather, Captain Mitchell offered Copeland a safe alternative to returning to his cell following his complaint of sexual assault. Crediting Copeland's allegation that he suffered further sexual assault after returning to his cell, the deprivation he suffered simply cannot be attributed to an act of deliberate indifference on the part of Captain Mitchell.[7]
 
 IV.
 
 22
 We have carefully reviewed Copeland's other claims and find them to be without merit. Accordingly, the order of the district court granting summary judgment in favor of prison officials is affirmed.
 
 
 
 [1]
 The prison officials named as defendants are Richard A. Lanham, Sr., Commissioner of the State of Maryland Division of Correction; Sewall B. Smith, Warden of the Maryland House of Correction-Annex; and Captains Isaac Mitchell and Gary Lutz, correctional officers at the Maryland House of Correction
 
 
 [2]
 Copeland's initial placement into administrative segregation was properly reviewed within 96 hours, but as prison officials concede, they failed to review his case again within 30 days as required by prison regulations. He was released into the general prison population on May 30th
 
 
 [3]
 The Eighth Amendment applies to the States through the Fourteenth Amendment. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991)
 
 
 [4]
 We note our disagreement in this regard with the basis upon which the district court granted summary judgment for the prison officials. It reasoned that Copeland had not demonstrated "by affidavits that he was molested or physically assaulted[;] ... [and, a]lthough inmates have a right to be protected from harm, there is no constitutional right to be free from sexual overtures." Copeland's verified complaint, however, contains specific allegations of a physical sexual assault. "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams, 952 F.2d at 823 (emphasis omitted). We conclude that Copeland's verified complaint was sufficient to raise a genuine issue of material fact concerning whether Copeland was the victim of physical sexual assaults by another inmate
 
 
 [5]
 Prison officials argued in their brief that because Captain Mitchell offered Copeland a choice to be placed on segregation, his reaction to Copeland's complaint could not constitute deliberate indifference. In response to this argument, Copeland thereafter attempted to characterize Captain Mitchell's reply as an "ultimatum to return to his cell or face punitive consequences." Reply Brief of Appellant at 3. We have no doubt that because of the more onerous conditions of confinement, prisoners may view placement on segregation as punishment. Nevertheless, as discussed below, temporary segregation is in most instances the only immediate response available to prison officials to protect prisoners complaining of threats to their safety from other inmates
 
 
 [6]
 Copeland admits that he, in fact, changed cells eight times between September 1990 and March 6, 1992, but he maintains that only two of these changes were prompted by his complaints against previous cellmates. In assessing prisoner complaints, prison officials must be given broad discretion to make credibility determinations based on their past experience with the inmate. Cf. Bell v. Wolfish, 441 U.S. 520, 547 (1979). However, Captain Mitchell submitted no evidence indicating that the reassignments resulted from chronic complaints by Copeland. Nor did Captain Mitchell maintain that he did not believe that Copeland's complaint was worthy of credence based on his prior experience with Copeland. While on a different record we might conclude that Captain Mitchell believed that Copeland's complaint was merely a ploy to obtain yet another cellmate who was more to his liking, viewing the record in the light most favorable to Copeland, we cannot conclude for purposes of summary judgment that Captain Mitchell was permitted to discount Copeland's complaint based on his previous dealings with Copeland. Accordingly, we do not consider the fact that Copeland had previously had numerous cell changes in evaluating Captain Mitchell's response to Copeland's complaint
 
 
 [7]
 If the conduct of the direct actor, Captain Mitchell, does not give rise to a constitutional violation, then neither could the conduct of other prison officials. See Rucker v. Harford County, Md., 946 F.2d 278, 282 (4th Cir.1991), cert. denied, 112 S.Ct. 1175 (1992). Furthermore, viewed in the light most favorable to Copeland, the evidence is insufficient to raise a genuine issue of material fact concerning supervisory liability. Slakan v. Porter, 737 F.2d 368, 372-76 (4th Cir.1984), cert. denied, 470 U.S. 1035 (1985). Therefore, summary judgment in favor of Commissioner Lanham, Warden Smith, and Captain Lutz was proper